**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

KEITH HOOVER                               )
                                           )          3:06-CV-0212-HDM (VPC)
          Plaintiff,                       )
                                           )
     vs.                                   )          **REPORT AND RECOMMENDATION**
                                           )          **OF U.S. MAGISTRATE JUDGE**
JACKIE CRAWFORD, ET AL.,                   )
                                           )
          Defendants.                      )          April 16, 2007
_____)

     This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion to dismiss (#40).  Plaintiff opposed (#45) and defendants replied (#47).  The court has thoroughly reviewed the record and the motions and recommends that defendants' motion to dismiss (#40) be granted in part and denied in part.

**I.  HISTORY & PROCEDURAL BACKGROUND**

     Plaintiff Keith Hoover ("Mr. Hoover") is a prisoner at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections ("NDOC") (#6).  Co-plaintiff is Helen Hoover ("Ms. Hoover") (#15).  Keith Hoover and Helen Hoover ("plaintiffs") are married.  *Id.*, ¶ 19.  Plaintiffs bring their complaint pursuant to 42 U.S.C. § 1983, alleging violations of their First Amendment right to freedom of association and their Fifth and Fourteenth Amendment rights to due process and equal protection.[1]  *Id.*  Plaintiffs name as defendants Glen Whorton,

_____

[1] Plaintiffs filed their original complaint *in pro se* on May 25, 2006 (#12).  On July 21, 2006, plaintiffs filed their First Amended Complaint (#15) and submitted motions for substitution of counsel (#s14 and 18).  Donald York Evans, Esq., was substituted as counsel for Ms. Hoover on July 28, 2006 (#19), and for Mr. Hoover on August 2, 2006 (#20).

NDOC Director; Jackie Crawford, former NDOC Director; E.K. McDaniel, Ely State Prison ("ESP") Warden; William Donat, NSP Warden; Adam Endel; ESP Associate Warden; Debra Brooks, ESP Associate Warden; Sergeant Lightsey, ESP Correctional Officer; Todd Riches, C/O Lindsley, and C/O Stroik, Correctional Officers; and NDOC. *Id.*

According to the complaint, Ms. Hoover was employed by NDOC as a health care worker until she tendered her resignation on August 30, 2003. *Id.*, ¶ 17. On August 19, 2005, while Mr. Hoover was incarcerated at ESP, plaintiffs were married. *Id.*, ¶ 18-19. Plaintiffs allege that since their marriage ceremony, defendants have refused to allow them any visitation privileges and have failed to follow their own regulations or give a legitimate reason for such denial. *Id.*, ¶ 21. Plaintiffs allege that defendant McDaniel gave instructions to ESP staff to refrain from processing Mr. Hoover's visitation requests. *Id.*, ¶ 22. Plaintiffs further allege that defendants Lightsey, Riches and Stroik have issued false disciplinary charges to Mr. Hoover in an attempt to prevent his transfer to an NDOC institution which might allow visitation. *Id.*, ¶ 24-25. NDOC subsequently transferred plaintiff to NSP, where plaintiffs allege the denial of visitation has continued. *Id.*, ¶ 23.

Plaintiffs contend that defendants have treated them differently from other married persons who were prior NDOC employees, have arbitrarily denied them a hearing, and have consistently violated Administrative Regulation ("AR") 719 and Institutional Procedure ("IP") 7.09. *Id.*, ¶ 26-28. Plaintiffs allege that they meet the necessary requirements for visitation. *Id.*, ¶ 29. Plaintiffs state the following claims for relief:

- Count I: AR 719, on which defendants based their refusal to grant visitation privileges to plaintiffs, violates plaintiffs' First and Fourteenth Amendment rights as applied in this case;

- Count II: defendants' actions violate plaintiffs' rights to equal protection because defendants apply AR 719 in an arbitrary and discriminatory fashion such that

plaintiffs are being treated differently from other similarly situated persons;

- <u>Count III</u>: defendants actions violate plaintiffs' rights to due process because defendants subjectively apply AR 719 based upon arbitrary, discriminatory, and capricious enforcement decisions, which has a chilling effect on the exercise of plaintiffs' First and Fourteenth Amendment freedoms;

- <u>Count IV</u>: plaintiffs request permanent mandatory injunctive relief compelling defendants to grant them visitation privileges;[2]

- <u>Count V</u>: plaintiffs request a declaratory judgment that AR 719 is unconstitutional as applied to them in this case;

- <u>Count VI</u>: defendants have conspired "to be deliberately indifferent" to the plaintiffs' constitutional rights and have committed acts in furtherance of such conspiracy; and

- <u>Count VII</u>: plaintiffs request punitive damages to punish defendants for their misconduct in violating their constitutional rights.

## II. DISCUSSION & ANALYSIS

### A. Discussion

#### 1. Motion to Dismiss Standard

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, all material allegations in the complaint are accepted as true and are construed in the light most favorable to the non-moving party. *Barnett v. Centoni*, 31 F. 3d 813, 816 (9th Cir. 1994); *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980). For the movant to succeed, it must appear beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Barnett*, 31 F. 3d at 816; *see also Rothman v. Vedder Park Mgt.*, 912 F.2d 315, 316 (9th Cir. 1990).

Under section 1983, a plaintiff must allege that (1) defendants subjected him to the

---

[2] On pp. 8-9 of their complaint, plaintiffs have mistakenly labeled two claims as "Third Claim for Relief," which results in the incorrect labeling of the remaining counts. The court will refer to the p. 9 "Third Claim for Relief" count IV, plaintiffs' "Fourth Claim for Relief" as count V, and so on.

deprivation of a right, privilege or immunity guaranteed by the U.S. Constitution or U.S. law, and (2) that the defendant acted under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  "'Conclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.'"  *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (quoting *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977)).  However, "the federal rules require only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (*citing* Fed.R.Civ.P. 8(a)).  The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  *Id.*, *citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B.  Analysis

#### 1. Count I First Amendment Claim

Defendants argue that because inmates have no constitutional right to contact visits, defendants have not violated plaintiffs' First Amendment rights (#40, pp. 3-4 and #47, p. 3). Plaintiffs respond that they are challenging a regulation, AR 719, on the basis that is not reasonably related to legitimate penological interests, and allege that NDOC has failed to state any legitimate reasons to deny plaintiffs visitation (#45, pp. 2-3).

#### a. Law

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correctional system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Freedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126 (2003) *citing Jones v. North*

*Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977).

When a prisoner alleges that a regulation violates his First Amendment rights, the test is whether the regulation bears a rational relationship to legitimate penological interests.  *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Jones*, 433 U.S. at 132 ("[n]umerous associational rights are necessarily curtailed by the realities of confinement.  They may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations... possess the likelihood of disruption to prison order or stability, or otherwise interfere with the legitimate penological objectives of the prison environment").

### b. Analysis

Since plaintiffs challenge a prison regulation, the correct analysis is under *Turner*. Plaintiffs allege that AR 719, as applied in this case, violates their First Amendment rights to freedom of association because defendants have denied them visitation for no legitimate reason (#15, p. 7, ¶¶ 21, 31).  Defendants argue that they have a legitimate penological reason to deny visitation to the plaintiffs; therefore, plaintiffs have failed to state a claim.  However, whether defendants' stated penological reason is "legitimate" is precisely what plaintiffs challenge in their complaint.  *See* #15, p. 5, ¶ 21; *see also* #45, pp. 2-3.  Whether defendants actually have evidence of a legitimate reason or plaintiffs have evidence showing no legitimate reason for denying visitation is not before this court on a motion to dismiss.  The court finds that plaintiffs have stated a First Amendment claim and denies defendants' motion to dismiss.

### 2. Count II Equal Protection Claim

Defendants contend that plaintiffs failed to allege that (1) defendants granted similarly situated inmates and their former prison employee spouses visitation, and that (2) defendants intentionally and with the discriminatory intent necessary to state an equal protection claim,

denied visitation to plaintiffs (#40, pp. 7-8). Plaintiffs maintain that their second claim for relief properly pleads that they are being treated differently from other similarly situated inmates and their families (#45, pp. 6-7). Plaintiffs further argue that while they did not use the word "intent" in their complaint, they alleged that defendants have applied AR 719 to plaintiffs in a "discriminatory fashion, arbitrarily, capriciously and discriminatorily," which is sufficient to state a claim for intentional discrimination. *Id.*, p. 7. Defendants respond that simply being treated differently does not create an equal protection claim (#47, pp. 9-10).

### a. Law

A plaintiff may state an equal protection claim by alleging "arbitrary" discrimination that bears "no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987). Plaintiffs must plead "intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High School*, 158 F.3d 1022, 1026 (9th Cir. 1998).

### b. Analysis

Taking all the allegations in the complaint as true, the court denies defendants' motion to dismiss. Plaintiffs allege that since August 2005, defendants have treated them "differently in that other similarly situated prior employees of NDOC have requested and obtained permission to effect contact visitation with their spouses, who are still housed under the auspices of NDOC" (#15, p. 6, ¶ 26; *see also* pp. 7-8, ¶ 34 (alleging the same)). Plaintiffs further allege that defendants' application of AR 719 is arbitrary, capricious and discriminatory. *Id.*, p. 8, ¶ 36. Defendants argue that plaintiffs have failed to plead that defendants acted to intentionally discriminate against them. However, the court concludes that the terms "arbitrary" and "capricious" both imply purposeful actions. *See* BLACKS LAW DICTIONARY 112 (8th Ed.2004)

6

(arbitrary is defined as "depending on individual discretion"); *see also id*. at 224 (capricious is defined as "characterized by or guided by unpredictable or impulsive behavior"). At this stage of the litigation, plaintiffs must merely plead that defendants acted with purpose. Plaintiffs allegations are enough to put defendants on notice that plaintiffs allege purposeful or intentional discrimination. The court denies defendants' motion to dismiss count II.

### 3. Counts I and III Due Process Claims[3]

#### a. Substantive Due Process

Defendants assert that the Due Process clause does not guarantee unfettered visitation in prison (#40). Plaintiffs' position is that denial of visitation between a husband and a wife in such an arbitrary and capricious fashion imposes an atypical and significant hardship on inmates. *Id*., pp. 3-4. Defendants reply that plaintiffs cannot prove that defendants are applying the visitation regulation in an arbitrary manner, nor can they demonstrate that the visitation regulation is so egregious itself as to invoke substantive due process protections on its own (#47, p. 5).

#### (1) Law

Prisoners have no fundamental due process right to unfettered visitation. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *see also Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002). To state a substantive due process claim for actions that do not implicate a fundamental right, plaintiffs must allege that defendants' actions were "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995) (*quoting Euclid v. Amber Realty Co.*, 272 U.S. 365, 395 (1926)). To justify a state action that implicates

---

[3] Plaintiffs bring due process claims in counts I and III. It is unclear whether plaintiffs bring a procedural and/or a substantive due process claim, and in which claim for relief. For purposes of judicial economy, the court addresses both here and construes count I as a procedural due process and count III as a substantive due process claim. The court addresses the adequacy of plaintiffs' complaint below.

something less than a fundamental right, the government must demonstrate its actions are reasonably related to a legitimate state interest. *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004).

### (2) Analysis

Defendants argue that plaintiffs cannot prove that defendants are applying the visitation regulation in an arbitrary manner. However, the issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

Since there is no fundamental right implicated here, plaintiffs must allege that defendants' denial of visitation is "'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Dodd v. Hood River County*, 59 F.3d 852, 864 (9th Cir. 1995). Plaintiffs allege that since August 2005, defendants have applied AR 719 in an arbitrary and capricious manner by denying them visitation without a legitimate penological reason while granting visitation to those similarly situated, thereby violating their right to due process (#15, p. 5, ¶¶ 21, 27 and p. 7, ¶¶ 31-32, 38, 40). By alleging an arbitrary state action that has no relation to a legitimate penological reason, plaintiffs have stated a substantive due process claim. The court denies defendants' motion to dismiss count III.

### b. Procedural Due Process

Defendants argue neither the Constitution nor the state confers a liberty interest on the plaintiffs such that they are guaranteed the right to unfettered visitation (#40, pp. 4-6). Defendants contend that lack of freedom to associate with citizens outside the prison is "an ordinary and typical hardship" associated with being in prison. *Id*., p. 6. Plaintiffs' view is that the fact that the state has established a visitation protocol and is now denying plaintiffs the right

to visitation without due process creates a liberty interest "based upon the conditions being so egregious as to implicate the due process clause itself" (#45, pp. 3-4).  Defendants reply that the denial of visitation is not a "dramatic departure from the prisoner's sentence" (#47).

### (1) Law

The procedural guarantees of the Fourteenth Amendment's Due Process clause apply only when a constitutionally-protected liberty interest is at stake.  *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1995), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).  Liberty interests can arise both under the Constitution and from state law.  *Wolff*, 418 U.S. at 557-58.  With respect to liberty interests created under the Constitution, the Supreme Court has held that "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore, is not independently protected by the Due Process Clause."  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) (internal citations omitted).  Regarding state-created liberty interests, the Supreme Court has held that states may, under some circumstances, create liberty interests protected by the Due Process clause, but that those liberty interests "will be generally limited to freedom from restraint which... impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

### (2) Analysis

Plaintiffs have no constitutional liberty interest in visitation under the Due Process clause.  *Thompson*, 490 U.S. at 461.  However, if the state has created a liberty interest, the plaintiffs are owed some type of procedural due process.  The Ninth Circuit has held that the following factors are used to determine whether a restraint is an "atypical and significant hardship" on an inmate:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective

custody"; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will inevitably affect the duration of the prisoner's sentence.

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003). In this case, there is no restraint involved in the denial of visitation. The visitation rule likely applies to the prisoner for his entire incarceration; however, the denial of visitation will not affect the duration of an inmate's sentence. There is no information about whether visitation is denied to inmates in administrative or protective segregation.

As noted above, "the denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence.'" *Thompson*, 490 U.S. at 461. The conditions of confinement imposed here are not unusual – restriction of visitation is what is to be expected when a prisoner passes through the prison door. Therefore, the denial of visitation is not an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and plaintiffs have no state-created liberty interest in visitation. Plaintiffs have failed to state a claim and the court grants defendants' motion to dismiss plaintiffs' procedural due process claim in count I.

**4. Qualified Immunity**

Defendants argue in their reply that they should be protected by qualified immunity (#47, pp. 6, 12-13). The general rule is that parties may not raise new issues in their reply because the opposing party is not afforded any opportunity to respond. *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998); *see also White v. City of Sparks*, 341 F.Supp.2d 1129, 1134 (D. Nev. 2004). Because defendants bring this argument for the first time in their reply, the court will not consider the issue.

///

### 5. Count V Conspiracy Claim

Defendants assert that plaintiffs fail to provide any facts concerning how defendants conspired to deny plaintiffs their constitutional rights and commit acts in furtherance of a conspiracy (#40, p. 9).  Plaintiffs claim that their allegations are sufficient because the federal rules require only notice pleading and evidence supporting their claim is not necessary at this stage of the litigation (#45,  p. 8).  Plaintiffs state that the extent of the acts in furtherance of a conspiracy will be the subject of discovery.  *Id.*

#### a. Law

To state claim under 42 U.S.C. § 1985(3),[4] a plaintiff must allege: "(1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person of class of persons of the equal protection of laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).  Allegations of conspiracy must be supported by material facts, not merely conclusory statements.  *Woodrum v. Woorward County, Okl.*, 886 F.2d 1121, 1126 (9th Cir. 1989) (citations omitted).  "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss."  *Ivey v. Board of Regents of Univ. Of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

#### b. Analysis

Plaintiffs allege that defendants have refused to grant visitation privileges to plaintiffs, *see* #15, p. 5, ¶ 20, and that defendants have consistently violated AR 719.  *Id.*, p. 6, ¶ 28.  Plaintiffs also allege that defendants conspired by making an "agreement to be deliberately indifferent to

---

[4] Plaintiffs fail to state whether they bring their conspiracy claim under federal or state law.  For these purposes, the court analyzes this claim under 42 U.S.C. § 1985(3).

11

the constitutional rights of plaintiffs" and that defendants "committed acts in furtherance of said conspiracy" (#15, p. 10, ¶ 44). Even taking all allegations in the complaint as true, the court concludes that plaintiffs have failed to meet the third element of section 1985. Plaintiffs do not allege any facts that would indicate that defendants acted together to deny visitation for the purpose of denying plaintiffs of their constitutional rights. While it is true that the federal rules mandate notice pleading, a conspiracy claim must be supported by material facts, not merely conclusory statements. *Woodrum v. Woorward County, Okl.*, 886 F.2d 1121, 1126 (9th Cir. 1989) (citations omitted). Plaintiffs have made only a broad statement alleging conspiracy and have failed to allege a situation in which defendants discussed or conferred or acted in concert with respect to the alleged constitutional violations. The court grants defendants' motion to dismiss plaintiffs' conspiracy claim.

### 6. Immunity from Suit

Defendants argue that they cannot be sued in their official capacities because they are not "persons" under 42 U.S.C. § 1983 (#40, pp. 11-12). Plaintiffs agree, but contend that they meant to name each individual defendant in his or her official capacity for the purpose of obtaining an injunction,[5] which is proper because the Eleventh Amendment does not bar suits against state officials in their official capacities seeking prospective relief (#45, p. 9). Plaintiffs also admit that they named NDOC as a defendant by mistake. *Id*. Defendants reply that plaintiffs cannot seek money damages from state officials in their official capacities (#47, pp. 11-12).

The Supreme Court has held that a suit against a state official in his or her official capacity is not suit against that official, but rather a suit against the official's office; therefore, an official

---

[5] The court notes that defendants argue against the court granting a preliminary injunction to plaintiffs (#47, pp. 13-14). Although plaintiffs request a preliminary injunction in the complaint, there is no motion for preliminary injunction setting out the basis for granting such an injunction currently pending before this court. Therefore, the court does not address this issue.

acting in his or her official capacity is not a "person" under section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). However, when a state official is sued in his official capacity for prospective injunctive relief, he is considered a "person" for the purposes of section 1983. *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 839 (9th Cir. 1997).

Plaintiffs have sued NDOC and all individual defendants in their official capacities. Plaintiffs admit they did not mean to sue NDOC; therefore, the court grants defendants' motion to dismiss NDOC. The court also grants defendants' motion to dismiss each individual defendant in his or her official capacity with respect to all claims requesting monetary relief.

### 7. Counts IV, V, and VII

Defendants argue that plaintiffs' "third," "fourth" and "sixth" claims for relief, which the court refers to as counts IV, VI and VII, are actually requests for specific remedies rather than enforceable legal rights (#40, p. 12). Plaintiffs respond that defendants are merely objecting to plaintiffs' chosen format, and claim that they chose this method of pleading so that the court could "easily eliminate certain causes of action, such as the punitive damages cause of action, should the court determine that the jury will not receive a punitive damage instruction" (#45, p. 10).

Count IV requests a mandatory injunction, count V requests a declaratory judgment, and count VII requests punitive damages (#15, pp. 9-10). These are not legal claims or causes of action – they are remedies. Moreover, the requests are extraneous considering plaintiffs have listed all these forms of relief under their "prayer for judgment." *Id.*, p. 11. The court grants defendants' motion to dismiss counts IV, V and VII.

///

///

1

### 8. Defendant Crawford

2

Defendants maintain that there is no evidence that defendant Crawford, as former NDOC

3

Director, participated in the alleged violations and further contend that there is no *respondeat*

4

*superior* liability under section 1983 (#40, p. 9). Plaintiffs agree and stipulate to defendant

5

Crawford's dismissal without prejudice (#45, p. 9). The court grants defendants' motion to

6

7

dismiss defendant Crawford without prejudice.

8

The court observes that plaintiffs have made numerous avoidable mistakes in their

9

complaint, from misnumbering claims, to admittedly including incorrect defendants, to pleading

10

remedies as separate counts. Plaintiffs' complaint is also less than clear in setting out particular

11

claims for relief, particularly in failing to distinguish their substantive due process and procedural

12

due process claims in counts I and III, and failing to specify the authority under which they bring

13

their conspiracy claim. These issues are time-consuming for the court, as well as the parties, as

14

is evidenced by the amount of time this court has spent dealing with these mistakes in this order.

15

16

Plaintiffs are represented by counsel; therefore, they are held to a higher standard than if they

17

were proceeding *in pro se*. The court warns plaintiffs' counsel that should future filings contain

18

mistakes that are clearly the result of carelessness, the court may *sua sponte* strike some or all of

19

20

counsel's pleadings. The court orders plaintiffs to file an amended complaint in accordance with

21

this order.

22

### III. CONCLUSION

23

24

Based on the foregoing and for good cause appearing, the court concludes that:

25

- Plaintiffs have stated a claim that AR 719 violates their First Amendment freedom of association by alleging AR 719, as applied to them, is not reasonably related to a legitimate penological interest. The court denies defendants' motion to dismiss plaintiffs' First Amendment claim in count I.

26

27

28

- Plaintiffs have sufficiently alleged defendants have intentionally treated them

differently than others who are similarly situated.  The court denies defendants' motion to dismiss plaintiff's equal protection claim in count II.

• Plaintiffs have sufficiently alleged arbitrary action without legitimate penological purpose in relation to defendants' application of AR 719.  The court denies defendants' motion to dismiss plaintiffs' substantive due process claim in count III.

• Plaintiffs have no constitutional or state-created liberty interest in visitation and therefore are owed no procedural due process.  The court grants defendants' motion to dismiss plaintiffs' procedural due process claim in count I.

• Defendants' qualified immunity argument is premature as there is no evidence before the court.

• Plaintiffs failed to allege any facts that would indicate that defendants discussed, conferred or acted in concert with respect to the alleged constitutional violations.  The court grants defendants' motion to dismiss plaintiffs' count VI conspiracy claim.

• Counts IV, V and VII are requests for particular remedies, not legal claims.  The court grants defendants' motion to dismiss counts IV, V and VII.

• Plaintiffs mistakenly sued NDOC and are barred from filing suit against defendants in their official capacity for money damages.  The court grants the defendants' motion to dismiss NDOC and each individual defendant in their official capacity with respect to all claims requesting monetary relief.

• The court grants defendants' motion to dismiss defendant Crawford without prejudice.

As such, the court recommends that:

Defendants' motion to dismiss (#40) be **GRANTED** as to defendant Crawford, plaintiffs' procedural due process claim in count I, count IV, count V, count VI, and count VII and **DENIED** as to plaintiffs' First Amendment claim in count I, count II, and plaintiffs's substantive due process claim in count III; and

The District Court order plaintiffs to file an amended complaint in accordance with the instructions in this order within twenty (20) days from the date the District Court issues its final order concerning this report and recommendation.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss (#40) be:

(1) **GRANTED** as to defendant Crawford;

(2) **GRANTED** as to plaintiffs' procedural due process claim in count I;

(3) **GRANTED** as to count IV, count V, count VI, and count VII;

(4) **DENIED** as to plaintiffs' First Amendment claim in count I;

(5) **DENIED** as to count II;

(6) **DENIED** as to plaintiffs's substantive due process claim in count III; and that

The District Court order plaintiffs to file an amended complaint in accordance with the instructions in this order within twenty (20) days from the date the District Court issues its final order concerning this report and recommendation.

**DATED:** April 16, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**

16